UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSE RIVERA,

v.

UNITED STATES OF AMERICA,

Respondent,

PETITION PURSUANT TO
28 U.S.C. § 2255

Case No. 04-00045-017
Judge Torres, USDJ

I.

INTRODUCTION

COMES NOW, Jose Rivera , the petitioner in the above referenced matter, hereby petitions this Honorable Court, the United States District Court, for the District of Rhode Island, to vacate, and or set aside the Judgment of Conviction of September 17, 2005; imposed by the Honorable Judge Torres, pursuant to 28 U.S.C. § 2255; upon the ground(s) that the petitioner was denied his right to appeal, by counsel's failure to file an explicitly requested Notice of Appeal (See Attached Affidavits in Support). See, Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

Alternatively, the petitioner invokes Rule(s) 7(a), to supplement the existing record to include those attached affidavits in support of the instant petition; and to request that this Honorable Court issue an Order, directed to former

counsel, Emily B. Vaziri, Esquire, of 166 Plainfield Street, Providence, Rhode Island, 02909, to submit a limited affidavit, which ascertains the portion(s) of conversations between the petitioner and counsel in relation to the petitioner's request to file a notice of appeal.

Moreover, the petitioner also invokes Rule 8(a), and requests that this Honorable Court issue an Order to conduct an evidentiary hearing as to this matter; at which time the petitioner will present testimony from those affiants who have supplied the included Affidavits in Support of the instant petition.

For the reasons set forth herein, the petitioner requests that this Court vacate the judgment of conviction, resentence the petitioner in order to allow him to appeal "anew". Roe v. Flores-Ortega, 120 S.Ct. 1029.

---

1/ It must be born in mind that the petitioner is not waiving full attorney/client privileges regarding all conversations; rather, the petitioner does waive limited communications regarding those assertions made herein. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); which the Ninth Circuit Court of Appeals has concluded that the rationale behind Simmons should apply to waiver of attorney/client privilege in habeas corpus cases. Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003).

II.

PROCEDURAL AND FACTUAL BACKGROUND

A aitting federal grand jury for the district of Rhode Island, issued an Indictment against the petitioner, charging him with violating Title 21 U.S.C. § 841(a)(1), (04-00045-017); and this matter was assigned to United States District Judge Torres. The district court assigned Emily B. Vaziri, of 160 Plainfield Street, Providence, Rhode Island, as counsel or record.

On June 25, 2004, the petitioner entered into a plea agreement with the United States Government, and agreed to plea to Count I of the Indictment, charging him with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). The plea agreement contained an appeal waiver provision, limiting his right to appeal to a narrow set of circumstances. The agreement was executed, and on June 25, 2004, the district court conducted a plea proceeding, whereby the petitioner allocuted to his conduct as set forth in the agreement.

On September 17, 2004, following the issuance of the written Presentence Report, the district court imposed a term of 108 months of imprisonment, to be followed by years of supervised release. No appeal was filed (despite petitioner's express instructions to former counsel to file a notice); and this motion is the first § 2255 petition

filed in this matter.

a. The Petitioner's Explicit Request

Prior to the execution of the plea agreement on June 25, 2004, and prior to the Supreme Court's decision in Blakely v. Washington, 124 S.Ct. 2531 (2004), counsel and client discussed the ramifications of a plea agreement; and his sentencing exposure. According to counsel, the Government was willing to offer a plea to Count I of the Indictment, charging him with possession with intent to distribute cocaine base, and in return; they would recommend that the district court impose the lowest possible penalty provision of 21 U.S.C. § 841(a)(1). Moreover, counsel had assured the petitioner that the government would request that the petitioner execute an appeal waiver provision in the agreement; however, counsel also assured that despite this provision, the petitioner retained limited appellate rights.

The petitioner subsequently entered into the plea agreement, with the understanding that he would retain limited rights to appeal. Specifically, the Supreme Court's decision in Blakely v. washington, 124 S.Ct. 2531 (2004), which though, concerned Washington's State sentencing scheme; had a possible impact n the Federal Sentencing Guidelines.

Although counsel informed the petitioner that Blakely was not applicable to these Guidelines, subsequent case law held this statement to be inaccurate. United States v. Booker, 125 S.Ct. 738 (2005); holding Blakely applicable to the Federal sentencing Guidelines; and holding the Guidelines, as is, violative of a defendant's Sixth Amendment right to jury trial. Booker, 125 S.Ct. 740 (2005), notwithstanding the remedial opinion.

On June 25, 2004, the district court accepted the petitioner's plea; and on this date, immediately following the allocution; the petitioner explicitly informed counsel that he wanted to, following sentencing, preserve his right to appeal, based on the possible impact of Blakely to his sentence; despite the Court's instruction that the offense for which the petitioner pled, carried a statutory mandatory minimum term of imprisonment.

During the hiatus between the plea proceeding and sentencing, counsel and petitioner engaged in numerous conversations concerning the impact of the plea, Blakely and it's progeny. In particular, Chief Justice Young's decision, pre-Blakely, holding the Federal Sentencing Guidelines unconstitutional, and violative of Green's right to jury trial; United States v. Green, ____F.Supp.2d _____ (2004); and post-Blakely rulings by Federal district and Circuit

Courts, concerning the continuing viability of the Federal Sentencing Guidelines; and the impact in relation to the petitioner's sentencing exposure.

One such conversation, which occurred while the petitioner was incarcerated at the Wyatt Detention Center, in Providence Rhode Island, pre-sentence; concerned the impact of Blakely, and it's progeny, upon the 100:1 ratio between cocaine hydrochloride and cocaine base. In particular, whether a viable argument could be made that this ratio would not have to be followed; if, as Chief Justice Young held in Green; that U.S.S.G. § 2D1.1 is unconstitutional because it removes from the jury's purview, the critical element of 21 U.S.C. § 841(a) (weight and type of the substance.

2/ Interestingly, post-Booker has revealed multiple decisions, holding that in the wake of Booker, and based on the remedial opinion, excising those portions of 18 U.S.C. § 3553, making the Guidelines mandatory; a court is now free to choose the correct interpretation of Congress' intent to punish cocaine base violators, utilizing a more appropriate ration. See, Simon v. United States, 361 F.Supp.2d 35 (E.D.N.Y. Sifton, J., 2005) (holding a 10:1 ratio more appropriate) (collecting cases)

On September 17, 2004, the district court conducted the sentencing proceedings. Immediately following the imposition of the term of imprisonment, the petitioner explicitly instructed Ms. Vaziri, to file a notice of appeal; to ensure that the petitioner's right to appeal was preserved. Counsel assured the petitioner that the notice would be filed within the 10 day time period dictated by Rule 4 of the Federal Rules of Criminal Procedure.

Subsequently, the petitioner directed an inquiry to the United States District Court, to inquire as to the status of his appeal, and it was revealed that no notice was filed by counsel. In a related conversation, post- sentencing with counsel, it was learned that counsel did not file the notice of appeal because she did not see the basis in which to appeal either the judgment or sentence. Counsel however assured the petitioner that she would, if requested, affirm that the petitioner did request that an appeal notice be served.

II.

LEGAL DISCUSSION

This petition incorporates two themes addressed by the Supreme Court, the Second and Tenth Circuit Court of Appeals. The first theme concerns the duty of counsel to perfect an appeal of a criminal conviction. See, Roe v.

Flores-Ortega, 528 U.S. 1029, 120 S.Ct. 1029 (2005); United States v. Snitz, 342 F.3d 1154 (10th Cir. 2003). The second involves the analysis and procedure for appeals brought by defendants who have waived their appellate rights in a plea agreement. See United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005); and Campusano v. United States, (2d Cir. Dkt. 04-5134-pr, Sheindlin, J., 2005).

1. Duty of Counsel to File a Notice of Appeal

The Supreme Court has provided bright-line rules for evaluating an ineffective assistance claim based on the performance of an attorney who has consulted with a criminal defendant about an appeal. Roe v. Flores-Ortega, 528 U.S. at 477-78, 120 S.Ct. 1029. A defendant who explicitly instructs his attorney, "not to file an appeal cannot later complain that, by following his instructions, his counsel performed deficiently." Id. at 477, 120 S.Ct. 1029. On the other hand, a lawyer who fails to follow a defendant's express instructions to file a notice of appeal acts in a manner that is professionally unreasonable. Id. at 477-78, 120 S.Ct. 1029. And, if counsel does not "file a requested appeal, a defendant is entitled to [a new] appeal without a showing that his appeal likely would have had merit." Id. at 477, 120 S.Ct. 1029 (quoting Peguero v. United States, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)).

The Tenth Circuit applied the above rules in Snitz, a pro se § 2255 case brought by a federal prisoner who alleged that his counsel had failed to pursue the direct appeal he had requested. 342 F.3d at 1155. The distict court denied the defendant's motion, on the basis that the defendant would not have won on either of the two arguments he wished to present on appeal. Id. at 1156. The Circuit Court observed, however, that the Supreme Court has "recognized repeatedly ... that a lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." Id.,at 1156-57; see also, id. at 1157 (stating that "when courts find that a requested appeal had not been taken, they do not consider the merits of the arguments that the defendant might have made on appeal.") (quotations omitted).

The Court in Snitz, also discussed the basic principle that, unless a defendant elects to proceed pro se, "every direct criminal appeal must be briefed on the merits by counsel and decided accordingly by the court, unless, after thorough review of all pertinent proceedings, the appeal is determined initially by counsel and then independently by the court to be wholly frivolous." Id. at 1157. A court "may not allow an attorney to withdraw until it satisfies itself that the attorney has provided the client with a diligent

and thorough search of the record for any arguable claim that might support the client's appeal." Id. at 1158.

In sum, the Court in Snitz concluded that the district court's approach was "not only foreclosed as a matter of specific precedent," it was also "contrary to broader values embodied in and implemented by the criminal appellate process." Id. at 1156. Allowing a defendant to proceed in spite of unpersuasive pro se arguments is not "a matter of formalistic compliance with a technical rule merely postponing the inevitable denial of relief on the merits." Id. at 1157. Rather, it serves to "safeguard important interests with concrete and potentially dispositive consequences which can be guaranteed only by the direct appeal process and the concomitant right to appeal." Id.

2. Appeals by defendants who have waived their appellate rights.

"Given the importance of plea bargaining to the criminal justice system, court's generally enforce plea agreements and their concomitant waivers of appellate rights." Hahn, 359 F.3d at 1318. "Nevertheless ...., a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." Id. (quotations omitted). To meet the two "competing goals" of

enforcing plea agreements and "subjecting sentencing decisions to review for miscarriage of justice," courts have settled upon the following analysis and procedure to deal with a defendant who has waived the right to appeal his sentencing decision.

Before considering such a defendant's appellate arguments, the courts apply a three-prong enforcement test. The court of appeals determines: (1) whether the disputed appeal falls within the scope of defendant's waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.

3. Application to Mr. Rivera's § 2255 motion.

First, it is conclusive that Mr. Rivera explicitly instructed his former counsel to file a notice of appeal. As well, it is also conclusive that counsel did not file the requested notice. Here, Mr. Rivera signed a plea agreement waiving many of his appellate rights. The present record shows that the trial court advised Mr. Rivera of his right to appeal; and similarly, it is also clear that counsel did not think any appeal would have had merit. The entire crux of this matter is <u>why</u> counsel did not pursue the appeal, despite her misgivings of the viability of any appellate issues.

Mr. Rivera's appellate rights have been significantly limited by his waiver, but the waiver does not foreclose all appellate review of his sentence. Since Mr. Rivera explicitly requested counsel to pursue the appeal, the only matter now for this court to attend to, is to vacate the judgment of conviction to allow Mr. Rivera to appeal "anew". Roe v. Flores-Ortega, 528 U.S. at 477, 120 S.Ct. 1029. Any resulting appeal will initially be evaluated under the summary procedure and analysis as held by the First Circuit.

Alternatively, the petitioner asserts that under Rule 8(a) of the Rules governing section 2255 proceedings, that he is entitled to an evidentiary hearing. The petitioner has raised a viable ineffective assistance claim; has supported his assertions with numerous conclusive affidavits in support; and the government cannot now realistically rebut any such assertions.

III.

For the reasons set forth herein, the petitioner respectfully requests that this Court issue an Order vacating the judgment, in order to allow an appeal "anew"; or to conduct, pursuant to Rule 8, an evidentiary hearing to expand the existing; and for such other and further relief as this Court may deem just and proper.

Respectfully,

Jose Rivera

Jose Rivera

Dated: 11/21/05